Wright, J.,
'delivered the opinion of the Court.
The Chancellor in this case granted complainant Evaline a divorce, a vinculo, from her husband, William Brooks. From that decree there is no appeal, and it is not now controverted but that it was correct. The bill under which it was obtained was filed on the 13th of April, 1857. She had before (on the 28th of January, 1854,) filed a bill for the same purpose, but which, through the persuasion and promises of her husband and of the defendant, John Caughran, she had caused to be dismissed.
From an examination of this record, there is little room to question that she was entitled to a divorce, not only at the time of the decree and of the filing of the last bill, but, also, of the first. If so, she had a lawful claim to a fair portion of her husband’s estate for her support; and if, after such right accrued, a conveyance of his property was executed by the husband, in order to defraud her of this right, and was-received by the grantee, with the same fraudulent design, the conveyance, as to her, is void, and ought not to be allowed to stand as a security for any purpose whatever. As before remarked, Brooks, the husband, does not appeal, and, as to-him, the decree is conceded to be right. But the contest *466 here is between the complainant and John Canghran, as to a slave, Dick, which he alleges he purchased of the defendant, B-rooks, on the 13th of February, 1855, very soon after the complainant had been induced to dismiss her first bill; and whether the same were not taken with the design to defeat complainant’s right to a support from her husband’s estate ? And we are clearly of the opinion it was. Under her first bill, she had succeeded in attaching this same slave, and also one other slave, a note for $900 upon one Watson, together with other property, when she was induced to dismiss the suit upon the faith of promises made to her, both by her husband and John Caughran, of future kind treatment, and that the property should be settled upon her and her children — ■ her husband being improvident. That they both were instrumental in having the suit dismissed, there can be no question 5 and just as little, that her husband, in order to effect this end, with the privity of Caughran, if not directly by him, gave her these assurances. But we are also reasonably satisfied, from his answer and the proof, that Caughran, not only carried these assurances from the husband, but that he him,-self made them to her, stating that he would see that they were executed. But, after she dismissed her bill, they were ¡never executed, but instead thereof, the cruelties of her husband were renewed, the note upon Watson and the other slave was wasted, and a hill of sale taken by Caughran to Dick, under which he claims him by absolute purchase, and he and William Brooks both swear, in their answers, that he had purchased and paid for him, when the truth was — as shown by a cotemporaneous writing, and other convincing evidence —he only held him in mortgage, as a security against a liability for a small bill of costs. Taking the entire record, then, we cannot doubt that both William Brooks and John Caughran concerted the scheme to procure a discharge of the lien upon the property created by the levy of the attachment, in order to enable the latter to get security for a small liability he was under for the former, and with the further motive that both might become gainers by the defeat of com *467 plainant’s lien, the purpose of Caughran probably being to make himself the owner of Dick by an unconscientious system of dealing with Brooks, who seems to have been a spendthrift. We think it clear they never intended to make the settlement on complainant and her children. Even if Caughran had not himself directly promised it should be done, it was wrong in him, being privy as he was to what Brooks had done and said, afterwards to take the bill of sale.
The Chancellor permitted it to stand only as a security for the costs. With this, complainant is content; and so should Caughran be: for though, asa general rule, the claims of the husband’s bona fide creditors, or liabilities properly incurred on his behalf existing prior to an application for a divorce and settlement by the wife, must prevail over the rights of the wife; yet where deeds, like the bill of sale in question, are void, on the ground of absolute Baud, they are to be considered as void ah initio, and are not allowed to stand as security to the grantee, for advances he may have made, or responsibilities he may have entered into, on account of them. Sands et al. v. Codwise et al., 4 Johns. R., 537. So that conceding the rule contended for by the counsel of Caughran to be the correct one, which we do, that the mortgagor cannot force from the mortgagee a reconveyance of the mortgaged estate, without a payment, not only of the mortgage debt, but also of any other indebtedness which he, at the time, may be under to him, yet it can be of no avail to Caughran here, because of his actual fraud in taking the bill of sale. Not only so; but it may well admit of question, whether, at the time of the filing of complainant’s last bill, or even now, there be any such bona fide indebtedness. The note for $900 upon Watson was given for a tract of land, which Caughran afterwards purchased, and undertook the payment of the note ; and it is shown that he and Brooks afterwards had a settlement in regard to it, and though it does not appear in what way a good portion of it was settled, yet it is plausible, at least, to suppose that some of the debts now claimed by Caughran to exist, in his answer, were embraced in that settlement. In *468 addition to this, it is positively proved that in several instances since the filing of this bill, Caughran has made payments for Brooks and caused the receipts to be ante-dated to a period anterior to the bill. And besides, there is some reason to believe, that, to some extent, if not entirely, Brooks may have repaid him, out of other assets. A party who thus involves his transactions in so much mystery, in order to affect the just rights of others, ought not to complain, if in the end, he himself is made to suffer.
Decree affirmed.